## A. E. KUEHN v. VILLAGE OF MAHTOMEDI.[1]

May 17, 1940.

Nos. 32,398, 32,429.

[1]Reported in 292 N. W. 187.

*Conrad R. Shefveland* and *Francis M. Smith,* for plaintiff-appellant.

*William T. Johnson,* for defendant-appellant.

JULIUS J. OLSON, JUSTICE.

Plaintiff, seeking damages from defendant, predicates his right of recovery upon three causes of action. Defendant's general demurrer to each thereof was sustained as to the first and second causes, but overruled as to the third. Plaintiff appeals from the order insofar as the first and second causes are concerned, defendant from that part overruling its demurrer. The appeals have been consolidated and jointly briefed and argued here. We shall dispose of them in the order mentioned.

The facts general to all three causes are these: Plaintiff now is and over a period extending back prior to 1927 was the owner of "a water plant comprised of wells, pumps, tanks, mains, and pipes of the character incident and necessary for use in supplying private customers with water" in a described area in Lincoln township, Washington county. In 1931 defendant village was organized as a municipal corporation out of a portion of the mentioned township. At that time plaintiff's system was operating without competition by anyone. In 1933 defendant, with full knowledge of the existence and operation of plaintiff's system, laid out and constructed its own water supply system.

The first cause has to do with defendant's alleged wrongful entry into plaintiff's supposed exclusive field so as thereby to deprive him of his customers, since its "distribution pipes run parallel to" those of plaintiff "and are designed to serve the same persons as the then customers of the plaintiff" within the village area. Because thereof he wants $32,000 in damages.

The second cause relates to an area referred to as "subdivision of blocks two (2) and three (3), East Shore Park," as shown by a plat. By this plat there was reserved to the owner and his successors in title and interest "the exclusive right to lay and maintain water pipes and erect tanks in any and all of" the streets, avenues, and alleys so dedicated. The village constructed water system also invaded this supposed exclusive area of plaintiff, and as a consequence his business was much hurt because former customers thereafter refused to purchase water from him but became customers and users of defendant's water supply system. For this he wants $10,000 as damages.

The third cause avers that defendant "in the progress" of its work of laying out and establishing its water supply system "wrongfully, negligently, and carelessly prosecuted" the same "so as to break, pull apart, and loosen the pipes of the plaintiff and immediately upon completion of its installation covered all of said pipes including the pipes of the plaintiff." Because of such "wrongful, negligent, and careless acts," large quantities of water "leaked from the plaintiff's mains and pipes," thereby making it

impossible for him to supply his customers with their accustomed service. For this he wants additional damages in the amount of $15,000. So the damages wanted amount to the very substantial sum of $57,000.

Plaintiff's theory in respect to the first cause is that under 2 Mason Minn. St. 1927, § 7536, by the mere establishment of his water system he secured a franchise claimed to be perpetual and exclusive; that defendant's construction of a separate system within its territorial area wrongfully deprived him of his franchise rights; that even if under the mentioned statute no such franchise came into being, yet, inasmuch as his system had been established over a period of many years prior to defendant's entry into the picture, "long acquiescence by the municipal authority" of the township, defendant's "predecessor," he had acquired such right of exclusive franchise. In respect to the second cause, the property dedicated being subject to the quoted reservations and plaintiff having succeeded to the title of the original owner, defendant thereby became "bound by rights which plaintiff [had so] acquired" and that these are exclusive.

1. We consider first plaintiff's contention that he, "by entering upon the highways and streets of the township with his water mains, [thereby] obtained a statutory franchise." The statute, § 7536, seems perfectly plain. The right granted thereby to the use of public highways is limited to "any water power, telegraph, telephone, pneumatic tube, or * * * light, heat or power company." It is thus apparent that the types of businesses granted permission to enjoy the privilege of using public highways are as there specifically listed and limited. Plaintiff, if within the act at all, must come within the classification of "water power" companies. He so asserts but beyond that furnishes no argument and assigns no sound reason for so stretching these words as to include plaintiff's enterprise within that classification. We think the term "water power" as used in the statute is plainly limited to power derived from the gravity of water as its weight or momentum is applied to the driving of mechanical equipment. Its most common use is the manufacture of electricity for heat,

light, and other similar purposes. But we need not speculate as to legislative intention, for the history of this legislation furnishes abundant proof that these words were advisedly used to convey no other meaning than that signified by the words themselves. The original enactment is found in L. 1860, c. XII, § 1, which provided that:

"Any telegraph company incorporated or organized under the laws of this state, shall have full power and right to use the public roads and highways * * * on the line of their route, * * *."

Thus the law remained until the enactment of G. L. 1881, c. 73, when telephone companies were added to the privileged class. By L. 1899, c. 51, telephone companies were required to obtain the consent of the municipality for the use of its streets. By L. 1901, c. 301, the first reference to the word "water" came into this picture. That chapter provided [§ 1]:

"Any person, persons or corporations now or hereafter organized for the purpose of improving, developing or using water power for heat, light, or power purposes, or any corporation now or hereafter organized for the purpose of developing, generating or using electric energy or currents for heat, light or power purposes, otherwise than by water power, is hereby authorized to acquire the right of way over, through, under or across any lands needed for the erection of poles or posts," etc.

Under R. L. 1905, § 2927, all the mentioned enactments relating to the use of highways by utilities were combined into what is now 2 Mason Minn. St. 1927, § 7536. It therefore seems perfectly clear that the legislature has never included or intended to include those who furnish or supply water for domestic and ordinary municipal use. Water supply systems in most of the state's urban communities are publicly owned and operated. Such service partakes of a governmental function rather than that of furnishing water for power purposes, usually furnished by private capital for pecuniary gain. The former has to do with health, cleanliness,

fire protection, and the like, while the latter generally has to do with private enterprise. We should not read into the statute something that is not there, nor, as we see it, intended to be there.

The authorities cited and relied upon by plaintiff are not helpful. This is so for the simple reason that the issue is not what the legislature could have done but rather and only what it has done. Russell v. Sebastian, 233 U. S. 195, 34 S. Ct. 517, 58 L. ed. 912, Ann. Cas. 1914C, 1282, so enthusiastically and extensively quoted by plaintiff, is not in point because there the fundamental law of California expressly gave the gas company the right to use public streets. The existence and validity of the grant were not at issue. The precise issue here is whether such a grant exists. We hold it does not.

2. We can see no merit in plaintiff's contention that because he has long been the owner and operator of this plant that he has thereby gained a right of franchise. Ever since L. 1899, c. 65, § 1 (now 2 Mason Minn. St. 1927, § 9186), the acquisition of any such right has been made impossible of attainment for it is there specifically stated that:

"No occupant of any public street, highway, alleys, public square or levee or any part or portion thereof within this state shall acquire any title to any such street, highway, alleys, public square or levee, or any part or portion thereof, by reason of such occupancy."

"Under our present statute no prescriptive right may be gained in a public street." Bennett v. Beaty, 156 Minn. 293, 300, 194 N. W. 627, 630. Inasmuch as the municipality (the township) had no authority to grant the use of its streets for such a purpose, obviously it could not create any such right by acquiescence.

3. In respect to the second cause of action, plaintiff claims that the reservation in the original dedication reserved the right now asserted by him. We think the rule is well settled that the right to use public streets and highways for such or similar purposes as those placed there by plaintiff is a privilege that may be exercised only by sovereign grant. True, the sovereign may clothe

its subdivisions and municipalities with such power. But, as we have seen, no such power has been granted here. So the question arises, may an individual by reservation withhold from the municipality the sovereign power incident to the public use of streets and highways? We think the rule applicable in the instant case is accurately stated in 18 C. J. p. 71 [§ 64]:

"There are certain limitations of the general rule permitting the dedicator to impose conditions and limitations. Thus he cannot attach to the dedication any conditions or limitations inconsistent with the legal character of the dedication, or which take the property dedicated from the control of the public authorities, or which are against public policy; and the dedication will take effect regardless of such condition which will be construed as void."

Many authorities are there cited sustaining the quoted text. Helpful also are 4 McQuillin, Municipal Corp. (2 ed.) § 1670, at p. 496; 2 Pond, Public Utilities (4 ed.) §§ 494, 495. In § 496, at p. 865, that author says: "The power to grant franchises is a high legislative trust." In Village of Grosse Pointe Shores v. Ayres, 254 Mich. 58, 64, 65, 235 N. W. 829, 831, the court said:

"The dedication of property for the purpose of a highway carries the right to public travel and also the use for all present and future agencies commonly adopted by public authority for the benefit of the people, such as sewer, water, gas, lighting, and telephone systems. * * *

"A condition in a deed of dedication prohibiting the uses above stated or circumscribing the future freedom of action of the authorities to devote the street to the wants and convenience of the public is void, as against public policy or as inconsistent with the grant."

Other cases helpful on this phase are: Bradley v. Spokane & I. E. R. Co. 79 Wash. 455, 140 P. 688, L. R. A. 1917C, 225; Coleman v. Hammond Lbr. Co. 160 Wash. 170, 294 P. 968; Wood v. National Water Works Co. 33 Kan. 590, 7 P. 233; State Road Comm.

v. Chesapeake & O. Ry. Co. 115 W. Va. 647, 177 S. E. 530; Riddle v. Town of Charlestown, 43 W. Va. 796, 28 S. E. 831; City of Noblesville v. Lake Erie & Western R. Co. 130 Ind. 1, 29 N. E. 484; City of Harlan v. Parsons, 202 Ky. 358, 259 S. W. 717.

While not directly in point yet helpful by analogy and reason are our own cases: Long v. City of Duluth, 49 Minn. 280, 51 N. W. 913, 32 A. S. R. 547, and Flynn v. Little Falls E. & W. Co. 74 Minn. 180, 77 N. W. 38, 78 N. W. 106.

We conclude that the court properly sustained defendant's demurrer to both causes of action hereinbefore discussed.

4. In respect to the third cause of action, overruled by the court, we note that in its memorandum it expressed serious doubt respecting what that cause sought to allege. It was characterized as "really a double-barrel affair." But it might be construed, so the court thought, "as one based on negligence and [also] as one based on trespass." The court pertinently points out that "if plaintiff cannot establish trespass he cannot recover. A recovery cannot be had for negligence." Out of extreme caution the court thought that perhaps, liberally construed, the pleaded cause might sound in trespass rather than negligence and for that reason overruled the demurrer. (To be noted, the court certified the question to be important and doubtful.) So the question is whether that cause of action can be so classed in view of plaintiff's chosen language. The charge is that in the progress of defendant's work in installing its plant it "wrongfully, negligently and carelessly" caused the harm complained of. His theory is that by using the word "wrongfully" the pleader thereby chose a term sufficiently descriptive of trespass to distinguish it from the words immediately following, "negligently and carelessly." We find difficulty in so construing the word as here used conjunctively with "negligently and carelessly." If plaintiff wanted to characterize that word as something to distinguish it from those immediately following, it would seem that he would have chosen other words following it rather than those chosen. As used the allegation is one claiming wrongful injury based upon negligence and carelessness.

In passing, it is very difficult to imagine, upon the facts of this case, that the village, in building its own system of water supply, authorized under our statute (1 Mason Minn. St. 1927, § 1229), can be said to be a trespasser upon its own streets. From this pleading it is apparent that plaintiff has chosen negligence as the basis for his right of recovery. Not having given the village notice within the statutory limit of time and not having commenced his action within one year after the occurrence of the injury (§ 1831), the pleaded cause states no cause of action.

We conclude that the order insofar as it sustains defendant's demurrers to the first and second causes should be affirmed; that as to the third cause the order should be reversed.

So ordered.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.

