665 S.E.2d 243

**Carrie WILLIAMS and Robert Williams, Appellants,**

v.

**Nancy WATKINS and Babcock Center, Inc., Respondents.**

**No. 4429.**

Court of Appeals of South Carolina.

Submitted June 2, 2008.
Decided July 23, 2008.

532

Hemphill P. Pride, II, of Columbia, for Appellants.

Christian Stegmaier, of Columbia, for Respondents.

KONDUROS, J.

This appeal arises from the circuit court's order granting summary judgment in favor of Babcock Center and its employee, Nancy Watkins, on Carrie and Robert Williamses' claims for defamation and the intentional infliction of emotional distress. On appeal, the Williamses argue the court erred in finding South Carolina's Omnibus Adult Protection Act shields Babcock Center and Watkins from civil liability for claims stemming from their reporting the suspected abuse of a vulnerable adult. We affirm.[1]

## FACTS

In 1991, the Department of Social Services (DSS) placed an eight-year old, disabled child (Client) in Carrie Williams's (Caregiver's) licensed, therapeutic foster care home. Caregiver's husband, Robert Williams, also lived in the home.[2] Care-

---

1. This case was decided without oral argument pursuant to Rule 215, SCACR.

2. The South Carolina Department of Disabilities and Special Needs (DDSN) contracted with Babcock Center to provide programs for

giver subsequently contracted with Babcock Center to operate a CTH, and she continued to care for Client in her home until 2004.

On January 7, 2004, while attending a program at Babcock Center, Client told administrator, Nancy Watkins, of specific actions toward her by Caregiver's husband. Client was now twenty-one years old, and Watkins believed the conduct Client described to her was sexually abusive. Watkins immediately notified consulting psychologist, Dr. Wilton Hellams, of Client's disclosure. That evening, Client met with Dr. Hellams and repeated her specific allegations against Caregiver's husband. Following the counseling session, Dr. Hellams told Watkins he found Client's allegations to be credible. As a result, Watkins immediately moved Client to a respite-care home.

Pursuant to South Carolina law, DDSN regulations, and Babcock Center policy, the following day, Watkins reported Client's statements to the Sheriff's Department and the Adult Protective Services (APS) Program of DSS. Three months later, DSS notified Watkins its investigation had indicated "there was a potential for abuse" of Client in Caretaker's home. Upon receiving the APS report, the Center terminated its CTH contract with Caretaker.

Subsequently, Caretaker and her husband filed an action against Babcock Center and Watkins alleging defamation and the intentional infliction of emotional distress. As an affirmative defense to these claims, Babcock Center and Watkins asserted South Carolina's Omnibus Adult Protection Act shielded them from civil and criminal liability related to reporting Client's statements alleging sexual abuse by Caretaker's husband. The circuit court conducted a hearing on September 23, 2005, and granted summary judgment on both actions in favor of Babcock Center and Watkins. This appeal followed.

## STANDARD OF REVIEW

In reviewing the grant of summary judgment, this court applies the same standard that governs the trial court; sum-

vulnerable adults and to supervise their care in licensed community training homes (CTHs).

mary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002); *see also* Rule 56(c), SCRCP. "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant. . . ." *Willis v. Wu.*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004). Summary judgment is appropriate when "plain, palpable, and indisputable facts exist on which reasonable minds cannot differ." *Byerly v. Connor*, 307 S.C. 441, 445, 415 S.E.2d 796, 799 (1992).

## LAW/ANALYSIS

■ Caretaker and her husband argue the circuit court erred in granting summary judgment in favor of Babcock Center and Watkins because genuine issues of material fact remain regarding their actions for defamation and the intentional infliction of emotional distress. We disagree.

### The Omnibus Adult Protection Act

In 1993, South Carolina's General Assembly enacted the Omnibus Adult Protection Act ("the Act") to protect vulnerable adults from abuse, neglect, and exploitation. 1993 Act No. 110, § 1, codified as S.C.Code Ann. §§ 43–35–5 to 43–35–595 (Supp.2007).[3]

### A. Vulnerable Adults

The Act promulgated statutes designed to protect a class of adults from abuse, neglect, and exploitation. The Act defines a "vulnerable adult" as:

> [A] person eighteen years of age or older who has a physical or mental condition which substantially impairs the person from adequately providing for his or her own care or

---

3. The purpose of the Act was to: address the continuing needs of vulnerable adults; define abuse, neglect, and exploitation in a uniform manner, without regard to setting; clarify reporting requirements; provide victims with emergency protective custody; define the court's role in adult protection; and provide civil and criminal penalties to perpetrators of the abuse, neglect, or exploitation of vulnerable adults. S.C.Code Ann. § 43–35–5 (Supp.2007).

protection. This includes a person who is impaired in the ability to adequately provide for the person's own care or protection because of the infirmities of aging including, but not limited to, organic brain damage, advanced age, and physical, mental, or emotional dysfunction. A resident of a facility is a vulnerable adult.

S.C.Code Ann. § 43–35–10 (Supp.2007).[4]

We find Client is a "vulnerable adult" under the Act because she is over eighteen years old, unable to provide for her own care or protection, and a resident of a facility. Accordingly, Client is entitled to special protections from abuse, neglect, and exploitation.

## B. Mandated Reporters

■ The Act imposes a duty on certain individuals to report if they have "reason to believe that a vulnerable adult has been or is likely to be abused, neglected, or exploited." S.C.Code Ann. § 43–35–25(A) (Supp.2007). Individuals designated as "mandated reporters" under the Act include physicians, nurses, dentists, optometrists, medical examiners, coroners, and other medical, mental health or allied health professionals, Christian Science practitioners, religious healers, school teachers, counselors, psychologists, mental health or mental retardation specialists, social or public assistance workers, caregivers, staff or volunteers of an adult day care center or facilities, and law enforcement officers. *Id.* Furthermore, the Act also requires reporting by "any other person who has actual knowledge that a vulnerable adult has been abused, neglected, or exploited." *Id.*[5] Reporting the suspected conduct within twenty-four hours or the following working day is the reporter's individual responsibility. S.C.Code Ann. § 43–35–25(C)–(D) (Supp.2007). Provided the Act's mandatory reporting requirements are met, the report-

---

4. Under the Act, a "facility" includes a nursing care, community residential care, or psychiatric facility, as well as any other "residential program operated or contracted for operation by the Department of Mental Health or [DDSN]." S.C.Code Ann. § 43–35–10(4) (Supp.2007).

5. Moreover, the Act encourages voluntary reporting: "[A]ny person who has reason to believe that a vulnerable adult has been or may be abused, neglected, or exploited may report the incident." S.C.Code Ann. § 43–35–25(B) (Supp.2007).

er may additionally report suspected abuse, neglect, or exploitation directly to law enforcement; "and in cases of emergency, serious injury, or suspected sexual assault, law enforcement must be contacted immediately." S.C.Code Ann. § 43–35–25(G) (Supp.2007).

We find Watkins's duties as a social worker and program administrator make her a mandated reporter under the Act. Accordingly, the Act imposes a duty on her to report Client's statements, which gave Watkins "reason to believe" Caregiver's husband sexually assaulted Client. Additionally, because Watkins suspected sexual assault, the Act required her to report Client's statements to *both* APS and law enforcement. S.C.Code Ann. § 43–35–25 (Supp.2007).

At the hearing before the circuit court, Caregiver's counsel contended Watkins "should have considered the source and nature of the complaint." In stating Watkins "reported a spurious allegation made by a profoundly mentally and physically handicapped young lady," counsel implies allegations of abusive conduct made by a vulnerable adult, such as Client, should be taken less seriously by a mandated reporter than if they were made by a functionally-average adult. Clearly, such an interpretation is contrary to the General Assembly's intent to provide enhanced protections to adults who are particularly vulnerable to mistreatment. Moreover, we believe the General Assembly established brief time limits for reporting precisely to discourage second-guessing by mandated reporters.

The Act defines abuse, neglect, and exploitation; however, neither the Act nor our courts have addressed the perspective from which a mandated reporter should view the vulnerable adult's allegations. The Minnesota Court of Appeals specifically addressed this question while construing a statute under its similar, Vulnerable Adults Act. *In re Kleven,* 736 N.W.2d 707 (Minn.Ct.App.2007). In *Kleven,* an employee of a group home for disabled men argued the verbal abuse she allegedly had inflicted upon the men should be viewed from the perspective of the residents, all vulnerable adults, rather than from the perspective of a reasonable person. *Id.* at 710. However, the court held in *Kleven* that to accept such an argument "would mean that the more vulnerable the adult, the worse his

caretaker could permissibly treat him.... [This] interpretation is an affront to the purpose of the act and leads to absurd results, which we presume the legislature did not intend." *Id.* at 711.

We find Watkins, by promptly reporting Client's statements to APS and law enforcement, acted precisely as the Act intended.

## C.   Immunity from Liability

■   Having determined Client is a vulnerable adult and Watkins is a mandated reporter, whose duty to report was triggered by Client's statements, we turn next to whether the Act shields Watkins and Babcock Center from civil and criminal liability that could otherwise arise from the act of reporting.

> A person who, acting in good faith, reports pursuant to this chapter or who participates in an investigation or judicial proceeding resulting from a report is immune from civil and criminal liability which may otherwise result by reason of this action.   In a civil or criminal proceeding good faith is a rebuttable presumption.

S.C.Code Ann. § 43–35–75(A) (Supp.2007).

According to the affidavit of APS supervisor, Judy Irvin, Watkins reported Client's suspected sexual abuse "in good faith."   Furthermore, under the Act, a report of the abuse, neglect, or exploitation of a vulnerable adult is presumably made "in good faith."   Caretaker fails to produce evidence that defeats the presumption that Watkins reported in good faith.   Additionally, our review of the record confirms Watkins reported Client's suspected abuse in good faith.   Accordingly, we conclude Watkins and Babcock Center are immune from any potential liability flowing from the report.[6]

## D.   Penalties for Failure to Report

■   Caretaker and her husband further allege Watkins improperly reported Client's allegations to the Sheriff's Department and DSS. We disagree.

---

6.   Richland County Deputy Terry Cryer interviewed Client and stated he found the allegations had merit.   Moreover, the DSS report stated Watkins reported in good faith and "there was potential for abuse" in Caretaker's licensed CTH.

To the contrary, a mandated reporter who has actual knowledge that abuse, neglect, or exploitation of a vulnerable adult has occurred, and who knowingly and willfully fails to report this knowledge is guilty of a misdemeanor, and upon conviction, the person *must* be fined in an amount up to $2,500 or imprisoned up to one year. S.C.Code Ann. § 43–35–85(A) (Supp.2007). Furthermore, a mandated reporter with reason to believe abuse, neglect, or exploitation of a vulnerable adult has occurred, or is likely to occur, and who knowingly and willfully fails to report is subject to disciplinary action by the appropriate licensing board. *Id.* Therefore, we find Watkins properly reported Client's allegations to law enforcement and DSS.

## CONCLUSION

Finding no genuine issue exists as to any material fact, we hold the Act entitles Watkins and Babcock Center to immunity from all civil and criminal liability related to their good faith report of the suspected abuse of a vulnerable adult. Additionally, under these facts, a failure to report the suspected sexual abuse would have resulted in a violation of the law, subjected a mandated reporter to penalties, and most importantly, subjected a vulnerable adult to the continuing potential for abuse. Accordingly, the circuit court's order granting summary judgment is

**AFFIRMED.**

HEARN, C.J., and SHORT, J., concur.