**CITY OF COHASSET, Appellant,**

v.

**MINNESOTA POWER, an Operating Division of Allete, Inc., Respondent.**

**No. A09–572.**

Court of Appeals of Minnesota.

Jan. 12, 2010.

Corey J. Ayling, Kathleen M. Brennan, Joelle M. Lester, McGrann, Shea, Carnival, Straughn & Lamb, Chtd., Minneapolis, MN, for appellant.

David R. Moeller, Minnesota Power, Duluth, MN, for respondent.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for Amici Curiae League of Minnesota Cities.

Considered and decided by STONEBURNER, Presiding Judge; JOHNSON, Judge; and STAUBER, Judge.

## OPINION

STAUBER, Judge.

On appeal from summary judgment in appellant city's action for declaratory and injunctive relief to enforce its claimed right to require respondent to obtain a franchise or permit to operate its natural gas pipeline within the city's borders, the city argues that the district court erred in concluding that respondent is not subject to the city's franchise or general police power because respondent is not a natural gas public utility. Because respondent is not a natural gas public utility, we affirm.

## FACTS

Respondent Minnesota Power is an operating division of Allete, Inc., which provides electrical service to retail customers, municipalities, and large-scale industrial users. The Boswell Energy Center is a coal-fired electric generating plant operated by respondent and located in appellant City of Cohasset (the city). In April 2008, respondent informed the city that it planned to construct a private pipeline to serve its natural gas needs. The city subsequently provided notice to respondent that the proposed pipeline was subject to the city's franchise power.

On June 5, 2008, respondent filed the required application with the Minnesota Public Utilities Commission (MPUC) requesting approval of the proposed pipeline route. The application stated that the proposed pipeline would connect the Boswell Energy Center with the Great Lakes Gas Transmission Company (Great Lakes) natural gas pipeline located at the city's border. The purpose of the pipeline is to provide natural gas to ignite the coal used to create electrical power, thereby replacing the fuel oil ignition currently used at the Boswell Energy Center, and reducing emissions. Although the pipeline would be located entirely within the city, the pipeline will only serve the Boswell Energy Center.[1]

After respondent filed its route application with the MPUC, representatives from respondent met with the Cohasset City Council to discuss the city's position that the proposed pipeline was subject to a franchise, including payment of a franchise

---

1. At respondent's suggestion, the city earlier stubbed off a six-inch pipe from Great Lake's main pipeline to the natural gas for respondent's ignition needs. However, respondent's engineers indicate that the six-inch pipe is not sufficient for respondent's ignition needs.

fee. Respondent took the position that the city had no franchise authority because of "preemption" by the MPUC routing permit process and that it was not a natural gas public utility. The city subsequently commenced this action for declaratory and injunctive relief against respondent seeking to enforce the city's claimed right to require respondent to obtain a franchise or other permit to build and operate a pipeline within the city's borders.

On September 17, 2008, the MPUC granted the permit for the pipeline. The city then passed an ordinance requiring high-pressure pipelines, including the pipeline proposed by respondent, to be subject to a franchise and franchise fee. Respondent subsequently moved to dismiss the city's declaratory judgment action on the basis that it is not a natural gas public utility because it does not furnish natural gas to the public and, therefore, it is not subject to the city's franchise power.

In December 2008, the district court heard arguments on respondent's motion, which was treated as one for summary judgment in light of the district court's consideration of materials outside of the pleadings. The district court granted respondent's motion, concluding that because respondent "does not furnish natural gas service to the public, it is not a natural gas utility." Thus, the court held that because respondent is not a natural gas utility, the pipeline is not subject to the city's franchise power and any franchise fee. This appeal followed.

## ISSUE

Did the district court err by concluding that respondent is not subject to the city's franchise or general police power because respondent is not a natural gas public utility?

## ANALYSIS

On appeal from summary judgment, this court reviews de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002). The construction and application of a statute to the undisputed facts of a case involves a question of law, which this court reviews de novo. *In re Kleven*, 736 N.W.2d 707, 709 (Minn.App. 2007); *Davies v. W. Publ'g Co.*, 622 N.W.2d 836, 841 (Minn.App.2001), *review denied* (Minn. May 29, 2001).

The city argues that the district court erred by concluding that respondent is not a natural gas public utility. Thus, the city argues that respondent is subject to the city's franchise power as contemplated in Minn.Stat. § 216B.36 (2008). The city, along with the League of Minnesota Cities, which filed a brief of amici curiae, further contend that under Minn.Stat. § 301B.01 (2008), respondent was required to obtain a franchise from the city before it constructed its pipeline because respondent is a corporation formed to furnish power for public use. Finally, the city argues that even if respondent was not a public utility, the pipeline would still be subject to the city's licensing power.

### A. Public utility

Minnesota law provides:

Any public utility furnishing the utility services enumerated in section 216B.02 or occupying streets, highways, or other public property within a municipality may be required to obtain a *license, permit, right, or franchise* in accordance with the terms, conditions, and limitations of regulatory acts of the municipality, including the placing of distribution lines and facilities underground.

Minn.Stat. § 216B.36 (emphasis added). A "public utility" is defined as "persons, corporations, or other legal entities, their lessees, trustees, and receivers, now or hereafter operating, maintaining, or controlling in this state equipment or facilities for furnishing at retail natural, manufactured, or mixed gas or electric service to or for the public or engaged in the production and retail sale thereof." Minn.Stat. § 216B.02, subd. 4 (2008).

The city argues that based on the plain language of Minn.Stat. § 216B.02, subd. 4, respondent is a public utility. The city further argues that because respondent is a public utility "furnishing" electricity to the public and occupying the city's public streets, respondent's gas pipeline is subject to a franchise under Minn.Stat. § 216B.36.

Respondent argues that because the pipeline at issue is a gas pipeline, and because respondent is not a gas company furnishing gas to the public, it does not constitute a public utility. Respondent further argues that public utilities are subject to many regulations and rate regulations, which are not applicable to its private gas pipeline. Consequently, respondent argues that its gas pipeline is not subject to a franchise.

▮▮ Both parties present compelling arguments, and both parties agree that this is an issue of first impression. Both parties also agree that the threshold question is whether respondent is a public utility for purposes of its gas pipeline. Thus, we turn first to the plain language of the statute. Our objective when construing a statute is to ascertain and effectuate the legislature's intent. *Peterson v. Haule*, 304 Minn. 160, 170, 230 N.W.2d 51, 57

(1975). "Where the words of a statute are clear and free from ambiguity, we have no right to construe or interpret the statute's language. Our duty in such a case is to give effect to the statute's plain meaning." *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

▮▮ Here, it is undisputed that respondent is an electric public utility. But respondent's existence as an electric public utility does not automatically subject it to the city's franchise power. The statute states that "[a]ny public utility *furnishing* the utility services ... or *occupying* streets, highways, or other public property within a municipality" may be subject to a franchise. Minn.Stat. § 216B.36 (emphasis added). The operative words are "public utility," "furnishing," and "occupying." Here, the pipeline is part of respondent's infrastructure. It is one of many components involved in the manufacture of electricity. The electric lines running out of respondent's power plant "furnish" the electricity to the public. The parties agree that these electric lines and related electric distribution components could be subject to a franchise, but the city has chosen not to franchise the electric lines and distribution components.[2] The pipeline, however, is not "furnishing" electricity to the public. Rather, it is serving respondent's infrastructure. Because it is not "furnishing" electricity to the public, it is not subject to the franchise power enumerated in section 216B.36.

The city next argues that respondent is subject to the city's franchise power because the franchise powers contemplated in section 216B.36 extends to public utilities "occupying streets, highways, or other public property within a municipality." The city argues that because respondent's

2. The franchise fees charged by municipalities for electric distribution components are ulti-   mately charged back to the consumers.

pipeline "occupies" the city's public property, it is subject to a franchise.

▪ We agree, as do the parties, that the pipeline "occupies" some public property within the city.[3] But we nonetheless conclude that the city's argument is without merit, for two reasons. First, as stated above, respondent is not furnishing natural gas to the public. In order to be subject to a city's franchise power, respondent must be a "public utility." *See* Minn. Stat. § 216B.36. A "public utility" is defined as an entity that operates, maintains, or controls equipment "for furnishing" electric or gas service for retail. Minn. Stat. § 216B.02, subd. 4. Although respondent is an electric public utility, it is not a natural gas public utility. It is not furnishing gas to the public at retail. The unstated premise in the statute is that a public utility's infrastructure is not subject to a city's franchise power. As respondent points out, the city's "expansive application" of a public utility would "include private roads and parking lots within Boswell Energy Center, any water discharge pipes, or even Boswell Energy Center itself if there is any nexus to the [city's] operations or existing services." We agree that such a result would be absurd. *See* Minn.Stat. § 645.17(1), subd. 1 (2008) (stating that we are to presume that the legislature does not intend an absurd or unreasonable result). Indeed, the parties agree that no separate infrastructure component of a public utility has ever been franchised in this state. Therefore, we conclude that because the pipeline is a private gas pipeline, and because respondent is not furnishing gas to the public for retail, it is not occupying public property as a public utility.

▪ Second, based upon the statutes governing the routing of pipelines, the city's authority to franchise respondent's pipeline was preempted when respondent obtained a "permit" that justified the pipeline's occupation of public property. The permit was issued by the MPUC pursuant to a statute that provides:

> **Primary responsibility and regulation of route designation.** The issuance of a pipeline routing permit under this section and subsequent purchase and use of the route locations is the only site approval required to be obtained by the person owning or constructing the pipeline. *The pipeline routing permit supercedes and preempts all zoning, building, or land use rule, regulations, or ordinances promulgated by regional, county, local, and special purpose governments.*

Minn.Stat. § 216G.02, subd. 4 (2008) (emphasis added).

The permit issued by the MPUC satisfies the purpose of section 216B.36, because it is "the only site approval required to be obtained by the person owning or constructing the pipeline." [4] *Id.* This permit "supercedes and preempts all . . . *ordinances* promulgated by regional, county, local, and special purpose governments." *Id.* (emphasis added). Moreover, Minn. Stat. § 216G.02 (2008), was enacted in

---

**3.** The city agrees that the pipeline does not cross any city streets or run parallel to any other public highways, streets, or roads, and "appeared designed . . . to skirt around any Cohasset city streets."

**4.** We note that the definition of "pipeline" as contained in Chapter 216G "does not include a pipeline owned or operated by a *natural gas public utility* as defined in section 216B.02,

subdivision 4." Minn.Stat. § 216G.01, subd. 3 (2008) (emphasis added). Thus, a pipeline owned and operated by a natural gas public utility could still be subject to a city's franchise powers under Minn.Stat. § 216B.36. However, because respondent is not a natural gas public utility, the routing of its pipeline falls within the ambit of Chapter 216G.

1987,[5] 13 years after Minn.Stat. § 216B.36 was enacted. *Compare* 1987 Minn. Laws ch. 353, § 1, at 2337 *with* 1974 Minn. Laws ch. 429, § 36, at 903. By enacting Minn. Stat. § 216G.02, the legislature intended to prevent municipalities from regulating pipeline routes not owned or operated by natural gas public utilities. And to the extent that there is any statutory conflict, Minn.Stat. § 216G.02, subd. 4, would control because it is the subsequently enacted and more specific provision. Minn.Stat. § 645.26, subd. 4 (2008). Therefore, because section 216G.02, subdivision 4, expressly "supercedes and preempts" the city's franchise "ordinance," the city has no authority to franchise respondent's pipeline.

The city further argues that *N. States Power Co. v. City of Oakdale*, 588 N.W.2d 534, 538 (Minn.App.1999), supports its claim that respondent's gas pipeline is a public utility. In that case, this court held that Minn.Stat. § 216B.36 conferred upon municipalities the power to require electric distribution lines to be placed underground either through a franchise or through reasonable exercise of its police powers. 588 N.W.2d at 538–41. Thus, the city argues that because respondent's pipeline occupies public property, the decision in *N. States Power Co.* mandates that respondent is subject to the city's franchise power under Minn.Stat. § 216B.36.

The city's reliance on *N. States Power Co.* is misplaced. In that case, it was undisputed that Northern States Power Company was a public utility. *See id.* Here, whether respondent's gas pipeline component is a public utility is the pivotal issue. Consequently, before this court can determine the applicability of Minn.Stat. § 216B.36, we must be determine whether

respondent's gas pipeline component is a public utility under section 216B.02, subdivision 4. *See* Minn.Stat. § 216B.36 (stating that "[a]ny *public utility* furnishing the utility services ... or occupying streets, highways, or other public property within a municipality may be required to obtain a ... franchise") (emphasis added). Accordingly, *N. States Power Co.* is not applicable to the issue immediately before this court.

Of some application, however, is *Dairyland Power Coop. v. Brennan*, 248 Minn. 556, 82 N.W.2d 56 (1957). In that case, the supreme court was asked to determine, inter alia, whether the electric company was a public utility for purposes of eminent domain. *Id.* at 561, 82 N.W.2d at 60. In determining that the company was a public utility, the court noted that what constitutes a public utility depends upon the particular facts of each case. *Id.* at 562–63, 82 N.W.2d at 61–62. The court further stated that:

> the mere fact that the charter or by-laws of a membership or co-operative organization prohibit it from serving other than its own members or engaging in business as a public utility is not determinative of whether it is a public utility, *for it is what the organization actually does that determines that question.*

*Id.* at 563, 82 N.W.2d at 62 (emphasis added) (quoting Am.Jur., Pub. Util. and Servs § 6).

Under *Brennan*, a determination of whether respondent is a public utility focuses on "what the organization actually does." *Id.* As noted above, "what [respondent] actually does" is furnish electricity to the public. It does not furnish gas to the public. Therefore, respondent's gas pipe-

---

**5.** Minn.Stat. § 216G.02, was originally codified as Minn.Stat. § 116I.015, and renumbered in 2006.

line, standing alone, is not subject to a franchise under Minn.Stat. § 216B.36 because it is not a natural gas public utility.

### B. Minn.Stat. § 301B.01

■ The city also argues that under Minn.Stat. § 301B.01, respondent is required to obtain a franchise before constructing the pipeline. This statute provides:

> A corporation may be organized to construct, acquire, maintain, or operate internal improvements, including railways, street railways, telegraph and telephone lines, canals, slackwater, or other navigation, dams to create or improve a water supply or to furnish power for public use, and any work for supplying the public, by whatever means, with water, light, heat, or power, including all requisite subways, pipes, and other conduits, and tunnels for transportation of pedestrians. No corporation formed for these purposes may construct, maintain, or operate a railway of any kind, or a subway, pipe line, or other conduit, or a tunnel for transportation of pedestrians in or upon a street, alley, or other public ground of a city, without first obtaining from the city a franchise conferring this right and compensating the city for it.

Minn.Stat. § 301B.01.

Respondent argues that Minn.Stat. § 301B.01, is similarly not applicable because the statute is limited to providing utility services for public use. Thus, respondent argues that because its pipeline is serving its own private industrial purposes, it did not need to obtain a franchise before building the pipeline.

■ We agree. "[A]n entity, to operate as a utility, must not only lay pipes and install equipment, but also must provide service, collect charges, and do other things necessary to conduct a utility busi-

ness." *City of St. Paul v. N. States Power Co.*, 462 N.W.2d 379, 385 (Minn.1990) (quotation omitted). Here, respondent is not using the pipeline to furnish gas to the public; it is not collecting charges or doing the things necessary to conduct a utility business as a natural gas public utility. Rather, the pipeline is solely a component of respondent's electrical production. Therefore, Minn.Stat. § 301B.01, is not applicable to respondent's gas pipeline.

### C. The city's licensing power

■ The city also contends that even if respondent is not a public utility, its pipeline would still be subject to the city's licensing power. To support its claim, the city cites Minn.Stat. § 412.211 (2008), which states in relevant part that "[e]very city shall be a municipal corporation having the powers and rights and being subject to the duties of municipal corporations at common law." The city argues that under this "broad police power," it has the authority to regulate streets, public grounds, fire prevention, nuisances, and the general public welfare, and impose fees for such regulation. *See* Minn.Stat. § 412.221, subds. 6, 17, 23, and 32 (2008). Thus, the city argues that even if respondent's gas pipeline is not a public utility, its police powers provide it with the authority to enact "[a] franchise ordinance requiring [respondent as the pipeline] owner-operator to get a franchise and to pay a fee as a condition for traversing streets and public grounds."

It is well settled that municipalities possess no inherent powers and are purely creatures of the legislature. *See* Minn. Const. art. XII, § 3. Thus, municipalities possess only those powers that are conferred by statute or implied as necessary to carry out legislatively conferred powers. *See Minnetonka Electric Co. v. Village of Golden Valley*, 273 Minn. 301, 304, 141

N.W.2d 138, 140 (1966) (holding that where state legislature has preempted the field, municipal ordinance that conflicted with state law could not operate).

Here, the city is seeking to regulate and impose a franchise on respondent's pipeline under its general police powers. But this franchise power is specifically found in Minn.Stat. §§ 216B.36 and 301B.01, and these statutes limit regulation of pipelines to utilities intending to service the public. As addressed above, respondent is not a natural gas public utility, and respondent does not intend to furnish gas to the public for retail. Therefore, because sections 216B.36 and 301B.01, define the city's ability to regulate and franchise the gas pipeline, and because respondent's pipeline does not fall within the terms of these statutes, the city does not have the power to regulate and impose a franchise under Minn.Stat. § 412.211.

■ Finally, the city argues that under *N. States Power Co. v. City of Oakdale*, "Minn.Stat. § 216B.36 preserves not just the 'franchise power' but also the city's police power to issue a 'license' or a 'permit' for hazardous activity and to charge an appropriate licensure fee." In that case, this court held that the plain language of Minn.Stat. § 216B.36, preserves the authority of municipalities to require electric distribution lines of a public utility to be placed underground. *N. States Power Co.*, 588 N.W.2d at 541. The court went on to hold that Minn.Stat. § 216B.36 "can be read to allow for a revenue-generating fee from a franchise and a separate fee for a permit to defray administrative costs." *Id.*

The language from *N. States Power Co.* assumes that Minn.Stat. § 216B.36 is applicable. Here, the statute is not applicable because respondent is not a natural gas public utility. Rather, the pipeline at issue is merely a component of respondent's operation as an electric public utility. In contrast, section 216B.36 was applicable in *N. States Power Co.* because in that case, Northern States Power Co. was deemed to be acting in its capacity as an electric public utility. Thus, the city's reliance on *N. States Power Co.*, is misplaced, and the language permitting a city to impose a separate fee for a permit is inapplicable.

Because any powers conferred under Minn.Stat. § 216B.36 are not applicable, the city is left to argue that its general police powers enable it to require respondent to pay a permit or licensure fee to operate the pipeline. The city argues at length that such a fee would be necessary to protect the public from an "explosive" and "dangerous flammable" pipeline.

The city is essentially seeking a licensure or permit fee to raise revenue for fire and police protection that *may* be required if there is an incident regarding the pipeline. But the supreme court has "consistently rejected the argument that the general police power extends to permit revenue raising measures by municipalities." *Country Joe, Inc. v. City of Eagan*, 560 N.W.2d 681, 686 (Minn.1997). Here, any permit or licensure fee would consist of a revenue raising measure and, therefore, would be in conflict with the city's general police power. *See id.* Therefore, respondent's pipeline is not subject to the city's police power, and the district court did not err in granting summary judgment in favor of respondent.

## DECISION

Respondent is not a natural gas public utility because it is not furnishing gas to the public for retail. Therefore, it is not a natural gas public utility as contemplated by Minn.Stat. § 216B.02, subd. 4 (2008). Because it is not a public utility, respondent's gas pipeline component is not sub-

ject to a franchise under Minn.Stat. § 216B.36 (2008).

**Affirmed.**

STONEBURNER, Judge, dissenting.

I respectfully dissent because I conclude that the majority is adding language to the unambiguous language in Minn.Stat. § 216B.36 that authorizes the city to require Minnesota Power to obtain a franchise or permit for its natural gas pipeline that occupies streets, highways, or other public property within the city. *See Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986) (noting that statutes are interpreted according to ordinary meaning when the legislature's intent is plain from the statute's unambiguous language).

Minn.Stat. § 216B.36 authorizes the city to require "a license, permit, right, or franchise" of "[a]ny public utility furnishing the utility services enumerated in section 216B.02 or occupying streets, highways, or other public property within [the] municipality ..." Among the utility services enumerated in section 216B.02 is: "operating, maintaining or controlling in this state equipment or facilities for furnishing at retail ... electric service to or for the public or engaged in the production and retail sale thereof."

Minnesota Power is plainly a public utility under the definition of "public utility" in section 216B.02, subd. 4. Minnesota Power is plainly furnishing utility services enumerated in section 216B.02, and Minnesota Power's pipeline plainly occupies "streets,

highways, or other public property" within the city. The focus of Minn.Stat. § 216B.36 is on the nature of the entity that is subject to the city's franchise power, not the nature or purpose of the specific equipment that might be occupying a city's streets, highways or other public property. When that entity is a public utility furnishing one of the services enumerated in section 216B.02 or occupying streets, highways, or other public property within a municipality, under the plain language of the statute, the entity may be required by the city to obtain a franchise. Minnesota Power is subject to the franchise under both conditions. The legislature has the power to make the distinctions made by the majority, but I submit that this court does not.

I also disagree with the majority's conclusion that Minn.Stat. § 216G.02, subd. 4, preempts the city's authority to franchise the pipeline. The statute plainly pertains to site approval and route designation and, while the city's franchise authority may attach as a consequence of a permitted route, it is not any type of "site approval" and does not in any way conflict with the provisions of Minn.Stat. § 216G.02, subd. 4.