CITY OF COHASSET, Appellant,

v.

MINNESOTA POWER, an Operating Division of Allete, Inc., Respondent.

No. A09–572.

Supreme Court of Minnesota.

June 1, 2011.

Corey J. Ayling, Kathleen M. Brennan, Joelle M. Lester, McGrann Shea Carnival Straughn & Lamb, Chartered, Minneapolis, MN, for appellant.

David R. Moeller, Duluth, MN, for respondent.

Susan L. Naughton, St. Paul, MN, for amici curiae League of Minnesota Cities and Coalition of Utility Cities.

OPINION

PAGE, Justice.

This action arises out of respondent Minnesota Power's construction of a natural gas pipeline within the Cohasset city limits. Appellant City of Cohasset commenced an action for declaratory and injunctive relief against Minnesota Power seeking to require Minnesota Power to obtain a franchise from Cohasset to operate the pipeline. The district court concluded that Cohasset did not have franchise authority over Minnesota Power's pipeline and dismissed the matter. The court of appeals affirmed the district court, which we now reverse.

Cohasset is a statutory city with a population of approximately 2,500 people located in Itasca County. Minnesota Power, an operating division of Allete, Inc., provides electric service to 141,000 retail customers in northeastern Minnesota, including to residents of Cohasset. Minnesota Power's largest electric generating facility, the Boswell Energy Center, is located in Cohasset.

The Boswell Energy Center is a coal-fired electric plant that historically relied on fuel oil as an ignition source. In 2008, Minnesota Power applied to, and obtained from, the Minnesota Public Utilities Commission (MPUC) a permit for routing and construction of a pipeline to deliver natural gas to the Boswell Energy Center for use as an ignition source. Cohasset filed comments with the MPUC on Minnesota Power's permit request, reserving all rights to object to the operation of the pipeline under Cohasset's franchise power but making no objection to the route proposed by Minnesota Power for the pipeline. MPUC staff recommended that the issue of Cohasset's authority to require a franchise for operation of the pipeline was indepen-

dent of and separate from the MPUC's routing decision. In granting Minnesota Power a permit for construction of the pipeline, the MPUC adopted the staff report. The now-completed pipeline connects the Boswell Energy Center to a Great Lakes Gas Transmission Company natural gas pipeline located at the Cohasset city limits. The Minnesota Power pipeline runs for approximately 1.3 miles within the City of Cohasset, crossing under three public roads (County Road 88, County Road 87, and U.S. Highway 2) and several parcels of private property.

About the time the MPUC granted Minnesota Power's routing permit, Cohasset commenced an action for declaratory and injunctive relief in Itasca County District Court seeking to require Minnesota Power to obtain a franchise from Cohasset to operate the pipeline. Cohasset also promulgated an ordinance requiring operators of certain gas pipelines to be subject to a franchise and to pay a franchise fee. Minnesota Power's pipeline nominally falls within the pipelines subject to the Cohasset ordinance.[1] Cohasset then moved for a temporary injunction to bar operation of

1. Ordinance No. 44, titled "Requiring a Franchise and the Payment of a Franchise Fee for the Operation of a Designated Pipeline," states:

    1. **SECTION 1: FINDINGS OF THE CITY COUNCIL.**
        A. The laws of the State of Minnesota as adopted by the legislature (in Chapters 300 and 216B, *inter alia*) and as interpreted by the courts, as well as by the powers granted to Minnesota cities by the constitution of the State of Minnesota and other related legislation and decisional law, have uniformly and traditionally afforded to Minnesota cities the right and obligation to license, franchise, or permit the operation of pipelines within a city as a condition and requirement of such operation.
        B. By virtue of the Minnesota Pipeline Safety Act of 1987, Chapter 353, 1987 Minnesota Laws (the "Act"), the routing of certain pipelines has been vested with the Minnesota Public Utilities Commission.
        C. The Act requires routing permits for the following kinds of pipelines: "(1) pipe with a nominal diameter of six inches or more that is designed to transport hazardous liquids, but does not include pipe designed to transport a hazardous liquid by gravity, and pipe designed to transport or store a hazardous liquid within a refining storage, or manufacturing facility; or (2) pipe designed to be operated at a pressure of more than 275 pounds per square inch and to carry gas." Minn.Stat. § 216G.02 Subd. 1. Pipes falling within this statutory definition shall hereafter be referred to as "Designated Pipelines."
        D. As recognized by the Minnesota legislature in passing the Minnesota Pipeline Safety Act, Designated Pipelines may present a danger to the surrounding populace and environment, and local governmental units, such as the City of Cohasset, are relied on to provide emergency first response, fire, and police protection.
        E. The public interest is served by requiring any owner or operator of a Designated Pipeline to obtain a franchise from the City of Cohasset and to pay a franchise fee in return for the owner/operator availing itself of the privileges and benefits of operating the Designated Pipeline within the City and, further, to facilitate the funding of the necessary fire, police and first response protections for such pipeline and the surrounding community and environment.
    2. **SECTION 2: FRANCHISE REQUIRED.**
        Except pursuant to a franchise granted by the City, no person shall:
        A. Own, construct, maintain, or operate a Designated Pipeline within the City of Cohasset; or
        B. Own, construct, maintain, or operate a Designated Pipeline along, underneath, or intersecting any street, highway, or other public property within the City of Cohasset; or
        C. Furnish services within the City of Cohasset via a Designated Pipeline, or cause such services to be furnished.
    3. **SECTION 3: REQUIRED TERMS OF FRANCHISE.**

the pipeline except in compliance with the franchise ordinance.

The district court dismissed Cohasset's claims and denied Cohasset's motion for injunctive relief.[2] The court determined that Cohasset did not have franchise authority over Minnesota Power's natural gas pipeline because Minnesota Power is not a "natural gas utility."

A divided court of appeals affirmed. *City of Cohasset v. Minn. Power*, 776 N.W.2d 776 (Minn.App.2010). The court's majority opinion characterized Minnesota Power as an "electric public utility" and concluded that the pipeline is not subject to Cohasset's franchise power because the pipeline itself "is not 'furnishing' electricity to the public." *Id.* at 780. The court also concluded that Cohasset's franchise ordinance was expressly preempted by Minn.Stat. § 216G.02, subd. 4 (2010),

which provides that a pipeline routing permit "supercedes and preempts all zoning, building, or land use rules, regulations, or ordinances." 776 N.W.2d at 781. The dissent argued that Minnesota Power is subject to Cohasset's franchise authority because Minnesota Power itself "is plainly furnishing utility services." *Id.* at 785 (Stoneburner, J., dissenting). The dissent also disagreed with the majority's conclusion that Minn.Stat. § 216G.02, subd. 4, preempted Cohasset's authority to franchise the pipeline because, in the dissent's view, the statute pertains only "to site approval and route designation," not to a municipality's franchise authority. 776 N.W.2d at 785. Cohasset petitioned for further review, which we granted.

Cohasset argues that it has franchise authority over Minnesota Power's pipeline pursuant to two Minnesota statutes—

A. Any franchise required by this Ordinance must be issued the specific franchisee pursuant to a separate ordinance, the terms of which have been provided the franchisee in advance of promulgation with an opportunity to comment.

B. No exclusive or perpetual franchise or privilege shall be granted or created, nor shall any franchise or privilege be granted for a term of more than twenty-five (25) years.

C. As part of any franchise granted pursuant to this Ordinance, the City of Cohasset shall impose a fee of 1% of the fair market value of the gas or liquid delivered via the Designated Pipeline to end users within the City of Cohasset, plus an additional 1% of the fair market value of the transportation of such gas or liquid within the City of Cohasset. In the event the end user is the same entity that owns or operates the Designated Pipeline or is affiliated or related in any way to that owner/operator, then the ordinance granting the franchise shall provide for a method of calculating and/or imputing the fair market value of the basis used for calculating the above franchise fee.

D. The franchise fee may be changed by ordinance from time to time if done pursuant to a valid and proper exercise of Cohasset's police powers in light of a substantial change in circumstances or hardship. No change may be adopted until at least 30 days after written notice enclosing such proposed ordinance has been served upon the grantee of a franchise by certified mail.

E. If, for whatever reason, a franchise ordinance, as required by Section 2, is not in force, a franchise fee shall nonetheless be due and payable to the City. The franchise fee, in such circumstances, shall be calculated by the City Administrator in a manner consistent with Section 3(C).

4. **SECTION 4: EFFECTIVE DATE.** This ordinance shall be effective upon adoption and publication.

2. Specifically, the district court granted partial summary judgment, dismissing all but one of Cohasset's claims. The parties later stipulated to dismissal of the remaining claim; the district court denied as moot Cohasset's cross-motion for a temporary injunction and entered final judgment on February 26, 2009.

Minn. Stat. § 216B.36 (2010) and Minn. Stat. § 301B.01 (2010)—both of which grant municipalities franchise authority over public utilities operating within their municipal limits. Cohasset also argues that, even if those statutes do not grant franchise authority, the pipeline is subject to its franchise authority under its general municipal licensing powers. Minnesota Power counters that its gas pipeline is not subject to Cohasset's franchise authority because neither the pipeline nor Minnesota Power itself furnishes natural gas to the public. Minnesota Power further contends that even if Cohasset has statutory authority to require a franchise for the operation of the pipeline, that statutory authority is preempted by Minn.Stat. § 216G.02, subd. 4. We review questions of statutory construction de novo. *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn.2002).

## I.

Cohasset argues that it has the authority to require Minnesota Power to obtain a franchise under two provisions of Minnesota law—Minn. Stat. § 301B.01 and Minn. Stat. § 216B.36—both of which grant authority to municipalities to franchise certain activities within their borders. We consider each of these statutes in turn.

## A.

■ Cohasset relies in part on its historical franchise authority[3] over public service corporations such as public utilities. In particular, Minn.Stat. § 301B.01 bars the construction, maintenance, or operation of a pipeline on public property within a city, by a corporation organized to furnish power for public use, without first obtaining a franchise from the city "conferring this right and compensating the city for it." Specifically, it provides:

> A corporation may be organized to construct, acquire, maintain, or operate internal improvements, including railways, street railways, telegraph and telephone lines, canals, slackwater, or other navigation, dams to create or improve a water supply or to furnish power for public use, and any work for supplying the public, by whatever means, with water, light, heat, or power, including all requisite subways, pipes, and other conduits, and tunnels for transportation of pedestrians. No corporation formed for these purposes may construct, maintain, or operate a railway of any kind, or a subway, pipe line, or other conduit, or a tunnel for transportation of pedestrians in or upon a street, alley, or other public ground of a city, without first obtaining from the city a franchise conferring this right and compensating the city for it.

Minn.Stat. § 301B.01. Under the plain language of the statute, Minnesota Power is obligated to obtain a franchise from Cohasset: Minnesota Power is a corporation organized to supply the public with light or power, and it has constructed, maintained, and operated a pipeline on public property within the City of Cohasset.

Minnesota Power argues that section 301B.01 does not apply here because the

---

**3.** For example, Minn. Gen. Laws 1894, ch. 34, § 2592, provided that a corporation formed "for the construction, maintenance and operation of any work or works of internal improvement" had no right

> to construct, maintain or operate upon or within any street, alleys or other highway of any city or village, a railway of any kind or any subway, pipe line or other conduit for

supplying the public with water, gas light, electric light, heat, power or transportation or any improvement of whatsoever nature or kind, without first obtaining a franchise therefor from such city or village according to the terms of its charter and without first making just compensation therefor, as herein provided.

pipeline delivers natural gas only to the Boswell Energy Center and therefore is not "furnish[ing] power for public use." We reject this argument. First, by its terms, section 301B.01 applies to corporations, not to pipelines. As a result, whether the pipeline itself supplies the public is not material. Second, the statute applies here because Minnesota Power is indisputably a corporation "organized to construct, acquire, maintain, or operate internal improvements ... for supplying the public, by whatever means, with ... light, heat, or power, including all requisite ... pipes, and other conduits." Minn.Stat. § 301B.01. Because Minnesota Power is such a corporation, it is barred from constructing, maintaining, or operating a pipeline on public property without a franchise from Cohasset.

## B.

◼ Cohasset argues that it also has authority to require a franchise and payment of a franchise fee under a more recent statute, Minn.Stat. § 216B.36, specific to public utilities. Section 216B.36 permits a municipality to require a franchise of a public utility that furnishes utility services or occupies public property within the municipality and to require the payment of fees by the utility "to raise revenue or defray increased municipal costs accruing as a result of utility operations." The relevant part of section 216B.36 provides:

> Any public utility furnishing the utility services enumerated in section 216B.02 or occupying streets, highways, or other public property within a municipality may be required to obtain a license, permit, right, or franchise in accordance with the terms, conditions, and limitations of regulatory acts of the municipality, including the placing of distribution lines and facilities underground. Under the license, permit, right, or franchise,

the utility may be obligated by any municipality to pay to the municipality fees to raise revenue or defray increased municipal costs accruing as a result of utility operations, or both.

Minn.Stat. § 216B.36. Minnesota Statutes § 216B.02, subdivision 4, defines "public utility" and the services a public utility provides as

> persons, corporations, or other legal entities, their lessees, trustees, and receivers, now or hereafter operating, maintaining, or controlling in this state equipment or facilities for furnishing at retail natural, manufactured, or mixed gas or electric service to or for the public or engaged in the production and retail sale thereof.

The plain language of section 216B.36 therefore provides that a public utility is subject to the franchise power of a municipality if the public utility (1) furnishes any of the utility services enumerated in section 216B.02 or (2) occupies streets, highways, or other public property within the municipality.

Minnesota Power contends that, because it does not furnish natural gas service to the public, its pipeline is not subject to Cohasset's franchise ordinance under section 216B.36. The question under section 216B.36 is not whether Minnesota Power provides natural gas service to the public. Rather, the question is whether Minnesota Power is a "public utility furnishing the utility services enumerated in section 216B.02." Minn.Stat. § 216B.36. There is no question that Minnesota Power furnishes electric service—one of the utility services enumerated in section 216B.02—to the public, including to customers within the City of Cohasset. Because Minnesota Power is a public utility within the meaning of section 216B.02, it is subject to Cohasset's franchise pursuant to section

216B.36. Minnesota Power's status as a public utility is not affected by the fact that it does not provide natural gas service to the public, nor by the fact that the natural gas from the pipeline is used only in the operation of the Boswell Energy Center.

Moreover, Minnesota Power's pipeline runs under three public roads (County Road 88, County Road 87, and U.S. Highway 2) within Cohasset city limits, a second basis under section 216B.36 on which Cohasset may impose a franchise. *See* Minn.Stat. § 216B.36 ("Any public utility ... occupying streets, highways, or other public property within a municipality may be required to obtain a license, permit, right, or franchise...."); *Vill. of Blaine v. Indep. Sch. Dist. No. 12, Anoka Cnty.*, 265 Minn. 9, 17, 121 N.W.2d 183, 190 (1963) (noting that a franchise must be obtained "to lay pipes to conduct gas across or over the boundaries of the village, or over its streets, alleys, and public grounds if necessary"). *But cf. City of St. Paul v. N. States Power Co.*, 462 N.W.2d 379, 385 (Minn.1990) (discussing, but ultimately distinguishing *Village of Blaine* in holding that two gas marketing companies, engaged only in the sale of gas, were not public utilities because they did not lay pipes or do other activities necessary to operate a utility).

Accordingly, we hold that Minnesota Power is subject to Cohasset's franchise ordinance pursuant to both Minn.Stat. § 216B.36 and Minn.Stat. § 301B.01.[4]

## II.

◼ Minnesota Power argues that Cohasset's franchise authority is preempted by another statute—Minn. Stat. § 216G.02, subd. 4—which provides that the issuance of a pipeline routing permit preempts "all zoning, building, or land use rules, regulations, or ordinances" promulgated by local governments. Subdivision 4 provides:

> The issuance of a pipeline routing permit under this section and subsequent purchase and use of the route locations is the only site approval required to be obtained by the person owning or constructing the pipeline. The pipeline routing permit supersedes and preempts all zoning, building, or land use rules, regulations, or ordinances promulgated by regional, county, local, and special purpose governments.

Minn.Stat. § 216G.02, subd. 4. Minnesota Power contends that section 216G.02, subdivision 4, preempts "any other local action to regulate Minnesota Power's pipeline."

We reject the argument that, by section 216G.02, subdivision 4, the Legislature intended the MPUC's issuance of a pipeline routing permit to preempt all land use rules, regulations, and ordinances related not just to the siting of the pipeline, but also to its operation and maintenance. We need not decide here the precise scope of local governments' authority to regulate the operation and maintenance of pipelines. Nor need we decide the limits of the preemptive effect under section 216G.02 of a pipeline routing permit. Rather, for purposes of our decision in this case, it is sufficient for us to conclude that the limited preemptive effect of a pipeline routing permit under section 216G.02 does not reach Cohasset's franchise ordinance, which is not a land use ordinance and which does not burden the pipeline routing permitting process.

◼ Minnesota Power's argument also fails for two other reasons. First, section

---

4. Because we conclude that Minnesota Power is subject to Cohasset's statutory franchise authority, we do not address Cohasset's alternative argument that Minnesota Power is subject to Cohasset's general municipal licensing powers.

216G.02 places the permitting process under the control of the MPUC; the MPUC's authority over that process and the pipeline route expired, as it does in all cases, when the pipeline was certified as complete. *See* Minn. R. 7850.3900 (2009). Therefore, upon certification that the pipeline was complete, the permit by statute, rule, and its own terms expired and the preemptive effect of the permit expired with it. Moreover, because the MPUC routing permit, and the MPUC's authority over the permit, expired upon the completion of the pipeline's construction, even if the MPUC's routing permit imposed some regulation on the maintenance or operation of the pipeline, the MPUC has no continuing authority to enforce it.

■ Second, the pipeline routing permit issued to Minnesota Power by the MPUC for construction and operation of the gas pipeline at issue here specifically obligates Minnesota Power to "comply with all federal, state, county, and local rules and regulations." Therefore, even if Minnesota Power's interpretation of section 216G.02, subdivision 4, were correct—a proposition that, as discussed above, we reject—Minnesota Power is nevertheless obligated to comply, under the terms of the pipeline routing permit itself, with Cohasset's franchise ordinance.

Reversed and remanded.

PAGE, J., Concurring, GILDEA, C.J., and MEYER, J.

GILDEA, Chief Justice (concurring).

I agree with the majority that Minnesota Power's natural gas pipeline is subject to the franchise authority of the City of Cohasset. Specifically, I agree that the City's franchise authority is not preempted by the pipeline routing statute. *See* Minn. Stat. § 216G.02, subds. 2–3 (2010) (requiring "a pipeline routing permit" for the construction of certain pipelines and authorizing the Public Utilities Commission to "adopt rules governing the routing of pipelines"). Nonetheless, because the majority's discussion of the preemption issue is limited, I write separately to make clear that we have not altered our established framework for analyzing preemption issues.

Minnesota Power argues that the City's franchise authority is preempted by the pipeline routing statute, which provides that the issuance of a pipeline routing permit by the Minnesota Public Utilities Commission preempts all local "zoning, building, or land use rules, regulations, or ordinances":

> The issuance of a pipeline routing permit under this section and subsequent purchase and use of the route locations is the only site approval required to be obtained by the person owning or constructing the pipeline. The pipeline routing permit supersedes and preempts all zoning, building, or land use rules, regulations, or ordinances promulgated by regional, county, local, and special purpose governments.

Minn.Stat. § 216G.02, subd. 4 (2010). Because the pipeline routing statute contains a specific preemption clause, our analysis should focus on "the language of the statute." *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 6–7 (Minn.2008) (stating the factors we consider when the Legislature has "impliedly declared" an area to be "a matter solely of state concern" and explaining that this analysis does not apply when a statute "contains specific language as to the extent of permissible municipal regulation" (citation omitted) (internal quotation marks omitted)).

By its express terms, the pipeline routing statute "preempts all zoning, building, or land use rules, regulations, or ordinances." Minn.Stat. § 216G.02, subd. 4. Therefore, the issue here is whether the

City's franchise ordinance constitutes a "zoning, building, or land use" ordinance within the meaning of the statute. The object of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn.Stat. § 645.16 (2010). We "read and construe a statute as a whole" and "construe words and phrases according to their plain and ordinary meaning." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). In addition, we construe statutes, if possible, to avoid conflicts with other statutes. Minn.Stat. § 645.26, subd. 1 (2010).

In this case, the City's ordinance requires a franchise for the operation of a designated natural gas pipeline within the City. Cohasset, Minn., Ordinance No. 44, § 2 (2008). The franchise ordinance provides that no person shall "[o]wn, construct, maintain, or operate" a pipeline or "[f]urnish services within the City" without a franchise granted by the City. *Id.* The franchise ordinance also requires the payment of a franchise fee for operating a pipeline within the City. *Id.* § 3.

I conclude that the franchise ordinance is not a "zoning, building, or land use" ordinance within the meaning of the pipeline routing statute. Minn.Stat. § 216G.02, subd. 4. First, the franchise ordinance is not a zoning ordinance, because the franchise ordinance does not regulate the location of pipelines within the City. *See Calm Waters, LLC v. Kanabec Cnty. Bd. of Comm'rs*, 756 N.W.2d 716, 723 (Minn.2008) (explaining that "zoning" generally means the legislative division of an area " 'into separate districts with different regulations within the districts for land use, building size, and the like' " (quoting *Black's Law Dictionary* 1649 (8th ed.2004))). Next, the franchise ordinance is not a building ordinance, because the franchise ordinance does not regulate the construction or design of pipelines. *See City of Minnetonka v. Mark Z. Jones As-*

*socs., Inc.*, 306 Minn. 217, 220, 236 N.W.2d 163, 165 (1975) (construing the term "building code" to encompass regulations that affect the "construction and design" of structures). Finally, the franchise ordinance is not a land use ordinance, because the franchise ordinance does not regulate the specific use or development of land within the City. *See* Peter W. Salsich, Jr. & Timothy J. Tryniecki, *Land Use Regulation: A Legal Analysis and Practical Application of Land Use Law* 1 (2d ed.2003) (explaining that land use regulations generally focus on different aspects of the use and development of land, such as types and density of use).

By limiting the scope of the preemption clause to matters of zoning, building, and land use, it is clear that the Legislature intended to preempt only ordinances that purport to regulate the location and routing of pipelines. Furthermore, Minnesota Power's broad reading of the preemption clause creates a conflict between the pipeline routing statute and other statutes that expressly authorize cities to impose a franchise on public utilities. *See* Minn.Stat. § 301B.01 (2010) (barring the construction, maintenance, or operation of a pipeline on public property without a franchise from the city); Minn.Stat. § 216B.36 (2010) (providing that a public utility "may be required to obtain a license, permit, right, or franchise in accordance with the terms, conditions, and limitations of regulatory acts" of a municipality). For these reasons, I conclude that the City's franchise ordinance is not preempted by Minn.Stat. § 216G.02, subd. 4.

MEYER, Justice (concurring).

I join in the concurrence of Chief Justice Gildea.